UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Mark Chapman,
    Plaintiff,

v.

Sikorsky Aircraft Corp.,
    Defendant.

No. 3:13-cv-518 (SRU)

### RULING ON MOTION FOR LEAVE TO AMEND

Plaintiff Mark Chapman brings this lawsuit against Sikorsky Aircraft Corporation ("Sikorsky"), his former employer, alleging that Sikorsky discriminated against him and subjected him to a hostile work environment on account of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). Chapman also brings common law claims of invasion of privacy and libel per se. Now before me is Chapman's Second Motion for Leave to Amend the Complaint (doc. #76), which seeks to add state statutory and common law claims for wrongful discharge. For the reasons discussed below, the amendment would be futile, because the new claims are time barred. Therefore, the plaintiff's motion to amend is DENIED.

**I.      Background**[1]

Chapman was employed by Sikorsky from February 2007 until September 2011. For much of his tenure with Sikorsky, Chapman was the company's Senior Manager of Training Systems and Services ("Training Manager"). In June 2010, however, Sikorsky changed Chapman's position from Training Manager to World Wide Business Development for Training

---

[1] The following facts are drawn from the Proposed Amended Complaint (doc. # 76-2).

1

Services and promoted Chapman's former subordinate, Terry Eichman, to the Training Manager position.[2] Chapman was assured that the change did not reflect negatively on his performance or future with the company; rather the change was due to Sikorsky's business decision to increase its international sales – an area where Chapman had demonstrated abilities.

At or around the time Eichman took over, Eichman was 48 and Chapman was 52. Most of the individuals in the group that Chapman worked with were in their mid-forties. Chapman asserts that Eichman wanted to drive him out so that he could replace him with a much younger employee, which Eichman ultimately did. Within months of assuming the Training Manager position Eichman began to exclude Chapman from critical meetings and information and gave him an overly burdensome workload – in essence setting him up to fail. Eichman, along with Sikorsky's Human Resources Manager, Adam Jeffries, terminated Chapman over the phone on September 29, 2011, for insubordination and incompetence. Chapman alleges that his termination came after a period of harassment and that it was a direct result of his age.

During the period immediately before Chapman was terminated, he was assigned to work on a proposal to sell S-70i helicopters to the Royal Brunei Air Force (the "Brunei proposal"), which included a training component. Chapman was responsible for the training component and prepared a draft for Linda Scott, Sikorsky's Business Acquisition Manager ("BAM"). On September 22, 2011, Chapman informed Eichman that Scott was directing him to incorporate items into the Brunei proposal that were outside the scope of Sikorksy's U.S. Department of State-issued export license and therefore in violation of the Code of Federal Regulations for International Traffic in Arms Regulations compliance. Eichman essentially replied that Sikorsky had to do what the BAM required.

---

[2] Chapman continued to function as the Senior Manager of Training Services and Systems until the first quarter of 2011, when Eichman took over and Chapman assumed his new responsibilities.

Five days later, on September 27, Chapman was assigned the "impossible task" of completing a total rewrite of the training annex to the Brunei proposal within a period of six hours – a task which ultimately took two other Sikorsky employees approximately forty-eight hours to complete.  As discussed above, Chapman was terminated two days after that, on September 29, 2011.  Chapman asserts that he recently discovered that the final Brunei contract, executed after his termination, contains multiple violations of Sikorsky's export license.

## II.   Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Under this liberal standard, courts generally allow a party to amend its pleadings unless there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.  Discussion

Chapman seeks leave to amend his complaint to add state statutory and common law wrongful discharge claims.  Chapman brings his statutory wrongful discharge claim under Conn. Gen. Stat. § 31-51q, which permits suit against an employer:

> who subjects [an] employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer.

Chapman asserts that he was exercising his right to free speech on a matter of public concern by reporting violations of Sikorsky's export license to his employer and that his termination was the

3

direct result of and in retaliation for that speech.  *See* Proposed Am. Compl ¶¶ 180-83.  He contends that reporting the perceived violations did not materially interfere with his job performance or working relationship with Sikorsky.  *Id.* ¶ 181.  Chapman's common-law wrongful discharge claim asserts that his termination violated important public policies of the United States and the State of Connecticut, which protect citizens who report illegal activities.

Sikorsky argues that Chapman's proposed amendments would be futile, because his common-law and statutory wrongful discharge claims are time barred under Conn. Gen. Stat. § 52-577's three-year limitations period for tort claims.  Connecticut courts apply section 52-577 to common-law wrongful discharge and section 31-51q claims.  *Holub v. Babcock*, No. CV 950319683S, 1996 WL 57076, at *3 (Conn. Super. Ct. Jan. 8, 1996); *Chance v. Leno's Lawn Serv., LLC*, No. LLICV065001435S, 2009 WL 3740645, at *2 (Conn. Super. Ct. Oct. 16, 2009) (citing *Holub*); *McClain v. Pfizer, Inc.*, No. CIV.A. 3:06-CV-1795V, 2008 WL 681481, at *5 (D. Conn. Mar. 7, 2008) (same).

Section 52-577 "is an occurrence, as opposed to an accrual, statute that runs from 'the date of the act or omission complained of.'"  *Stuart & Sons, L.P. v. Curtis Pub. Co.*, 456 F. Supp. 2d 336, 343 (D. Conn. 2006) (citing *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988)); *see also, e.g.*, *Prokolkin v. General Motors Corp.*, 170 Conn. 289, 294-302 (1976) (limitation period under section 52-577 "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers the injury"); *Flagstar Bank, FSB v. Ticor Title Ins. Co.*, 660 F. Supp. 2d 346, 352 (D. Conn. 2009) (same).  "Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation."  *Piteo v. Gottier*, 112 Conn. App. 441, 446 (2009) (citing *Bank of Hartford Cnty. v. Waterman*, 26 Conn. 324, 330 (1857)).  Accordingly, "when conducting an analysis under § 52-577, the only facts material to

the trial court's decision . . . are the date of the wrongful conduct alleged in the complaint and the date the action was filed." *Pagan v. Gonzalez*, 113 Conn. App. 135, 139 (2009) (internal citations omitted).

Here, the relevant act or omission occurred on September 29, 2011, when Chapman was terminated for alerting Sikorsky to the purported violations of its export license in the Brunei proposal.[3] Thus, Chapman was required to bring his wrongful discharge claims within three years of that date. His motion to amend is treated as having been filed on October 31, 2014, a month after the three-year statute of limitations expired.[4]

Chapman does not dispute that section 52-577 applies, but asserts that the doctrine of equitable tolling should be applied in this case and/or that Sikorsky should be equitably estopped from raising a statute of limitations defense, because Sikorsky's wrongful acts and omissions prevented him from discovering the facts necessary to bring his wrongful discharge claims. Pl.'s Pl.'s Reply Br. 2-4 (doc. # 80).

Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations "if despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim." *Gallop v. Commercial Painting Co.*, 42 Conn. Supp. 187, 192 (1992) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990), *cert. denied*, 501 U.S. 1261, (1991)). It is not clear that equitable tolling, per se, is available in this case. Several Connecticut

---

[3] In addition to his equitable tolling arguments, Chapman suggests that the relevant occurrence is the date that the Brunei contract was signed – December 2, 2011 – because that is the date that his claims became "ripe for adjudication." That is incorrect. By its plain language, section 52-577 is not concerned with when the plaintiff's claim accrued, only with the "date of the action or omission complained of." Conn. Gen. Stat. § 52-577; *Fichera*, 207 Conn. at 212; *Rosenfield v. Rogin, Nassau, Caplan, Lassman, & Hirtle, LLC*, 69 Conn. App. 151, 159 (2002) ("Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." (internal citations omitted)). The "act or omission complained of" here is Chapman's termination; the date of execution of the contract containing information that he alerted his employer to is irrelevant.

[4] Although the Motion to Amend was filed on November 7, 2014 (see doc. # 76), at a telephone conference on October 31, 2014, I ruled that the motion would be treated as having been filed on that date for statute of limitations purposes. *See* Memorandum of Telephone Conference; Order (doc. # 72).

Superior Court judges have held that "the doctrine of equitable tolling is inapplicable to a statute of repose, such as § 52-577 . . . [because a statute of repose . . . cut[s] off the right of action after a specified period of time regardless of when the action accrues or when the plaintiff receives notice that his rights have been violated." *Crow & Sutton Assoc., Inc. v. C.R. Klewin Ne., LLC*, No. HHDX04CV054016823S, 2009 WL 1057977, at *4 (Conn. Super. Ct. Mar. 26, 2009) (citing *Connecticut Ins. Guar. Ass'n v. Yocum*, No. CV 940539691S, 1996 WL 367726, at *5 (Conn. Super. Ct. June 6, 1996)); *see also, e.g.*, *Saperstein v. Danbury Hosp.*, No. X06CV075007185S, 2010 WL 760402, at *13 (Conn. Super. Ct. Jan. 27, 2010).

Nevertheless, tolling of section 52-577 may be warranted where a defendant "fraudulently conceals from [the plaintiff] the existence of" the relevant cause of action, as Chapman effectively alleges here.  Conn. Gen. Stat. § 52-595; *see also Iacurci v. Sax*, 313 Conn. 786, 788 (2014).  In such circumstances, the cause of action is "deemed to accrue . . . when the person entitled to sue thereon first discovers its existence." *Id.*  To establish fraudulent concealment for the purposes of section 52-595, the plaintiff must demonstrate: (1) the defendant was aware of the facts necessary to establish the cause of action; and (2) the defendant intentionally concealed those facts from the plaintiff.  *Bound Brook Assoc. v. City of Norwalk*, 198 Conn. 660, 665 (1986).  Similarly, estoppel may be available under section 52-577 where: (1) the party against whom estoppel is claimed "do[es] or say[s] something calculated or intended to induce another party to believe that certain facts exist and to act on that belief"; and (2) the other party "change[s] its position in reliance on those facts, thereby incurring some injury." *Int'l Strategies Grp., Ltd. v. Ness*, 645 F.3d 178, 185 (2d Cir. 2011) (citing *Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 366 (1995); *Coss v. Steward*, 126 Conn. App. 30, 41-45 (2011)).

Chapman contends that due to Sikorsky's wrongful conduct, he was not aware that the Brunei contract, as executed, actually violated Sikorsky's export license until recently, after Sikorsky produced the final executed contract in July 2014 and he had a chance to depose two high-ranking Sikorsky employees in October 2014.  Pl.'s Reply Br. 5.  Yet, even if that is true, the contents of the Brunei contract have no bearing on Chapman's ability to bring his wrongful discharge claims.  In order to assert those claims Chapman need demonstrate only that he spoke out against the perceived unlawful conduct and that Sikorsky retaliated against him for doing so, in violation of section 31-51q and/or the common law.  Whether or not the contract actually violated the law is irrelevant.  Thus, Chapman was aware of all information he needed to assert a wrongful discharge claim at the moment of his termination and his claims cannot be tolled.  *See, e.g.*, *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 427 (2d Cir. 1999).  Chapman's proposed amendments are therefore futile, because his claims are time barred under section 52-577.

## IV. Conclusion

For the foregoing reasons, the motion to amend is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut this 6th day of January 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

7